Good morning again. Our last case this morning is National Veterans Legal Services, National Consumer Law Center, Reliance for Justice v. United States, 2019, 1081 and 83. Mr. Gupta. Good morning. And may it please the court, Chief Justice Gupta for the plaintiffs. This interlocutory appeal properly presents just two legal questions, one jurisdictional and one on the merits. And although the government tries to bring in new arguments under the rubric of jurisdiction, I think the only question that properly goes to subject matter jurisdiction is this. When a plaintiff who has paid a user fee to the government challenges that fee as an illegal exaction in contravention of a federal statute, is that a claim for which the Tucker Act provides jurisdiction? And the overwhelming answer offered by the Supreme Court's and this Court's precedent stretching back over a century is yes. It is Hornbook law that, as this Court put it in Errol Linnaeus, that the Tucker Act provides jurisdiction to recover an illegal exaction when the exaction is based on an asserted statutory power. In fact, we don't know of any case, I don't think the government has identified one, in which this Court has held that it lacks jurisdiction to determine whether a government-imposed fee is unlawful and should be returned to those who paid it. Now, in this appeal, the government attempts to manufacture doubt on this score only by plucking some dicta, we think, out of context from this Court's decision in Norman. You don't have a lot of time. Do you mind if I just turn you to the merits? Sure. And I want to ask you this hypothetical. I mean, the statutory language, because it's got a lot of stuff interspersed between the operative language, is a little hard to parse for me. But as far as I can tell, it authorized the Judicial Conference to prescribe fees for the public accessing information that's available through automatic data processing. Right. There's no dispute on that score, Your Honor, but I think... So here's the question I have, though. If at the time, and I know a lot's going on back and forth since this was first enacted, there was amendments the government's doing, or the Judicial Conference... Sorry, I'm going to say the government, unfortunately, instead of the Judicial Conference, just because I'm used to saying that. Sure. And I understand there's a difference here. The Judicial Conference has gone through many iterations of this electronic CMACF and all that kind of stuff. Right. But suppose, hypothetically, at the time this was enacted, the judiciary was being really, really slow about providing electronic access. And even though all the judges and the clerk's offices and stuff were writing stuff and word of equipment and everybody knew it was there, they refused to provide any electronic access. So Congress, in an attempt to prod them, said, look, we know you have this stuff available electronically. We're going to let you have fees to recover the cost of providing it. Do you think those fees would include more than just the marginal cost of providing the information? How much more information would they include if the courts had never done it before, the infrastructure to do that, the servers and all the like, the interfaces on the internet and whatever else was necessary? Right. I think there would be a stronger case, certainly, in that scenario. And it's a little hard to know because I don't know exactly what your hypothetical statute looks like. And I think that matters.  That's the point. The same statute. Right. I mean, if someone had the ability to communicate with the court and say, please send me an electronic copy of the brief and so and so. Right. And whoever took the information, the court said, well, we don't have electronic. We got it in paper. We have to digitize it. Right. We have to go to the expense of converting paper into digital information, and then we can send it back to you. Right. So in the very beginning, would it have been reasonable for the judicial conference to have said, we're going to recoup that creation cost? It certainly would have been more reasonable than it would be after the amended statute where the Congress said, we see that you're charging more than the marginal cost of disseminating this information, and essentially cut it out. Please charge only what's necessary. But I think when you But isn't it true, isn't it true that in the very beginning, very few courts had digitized information? It started in Northern District of Ohio. That's right. So it's very interesting because the PACER user who's coming in electronically and dial up to the court saying, please send me this digital information, the court said, we don't have digital information. We'll create some for you. Right. So the burden in the beginning was on the government to make the cost to build up an electronic database that they could easily and cheaply transmit backwards. Once EMC, ECF comes along, the burden goes on to the private practitioners and whatnot to create the electronic information that they'd ship to the courts that the courts save and then ship back. Right. So I think it's important when you're trying to interpret the statute to remember that there is a Supreme Court has provided a jurisprudence for how to do statutory interpretation where you have a user fee statute. Right. And what the Supreme Court has said there is that the charge, unless Congress specifically directs otherwise, and there's a clear statement requirement, the charges for a specific service to a specific individual for a specific cost. Sure. I get that. But the problem is, to me, none of that solves the problem, which is what was Congress talking about when they said you can prescribe fees for access to information. Right. Did it just mean the fees involved in sending the information back to you, or did it mean the fees, as at least Judge Hubel thought in part, for building out the underlying infrastructure that made that possible? Well, remember that the class period here starts in 2010 and the statute that we're dealing with, the amended statute, was in 2002. By the time you get to 2010, the infrastructure is already created, and what the Senate report Well, the infrastructure has been created, but it needs to be maintained and updated. Right. I mean, we constantly are shutting down our EMCCF program here in the court. Right. To make adjustments, and that costs money to do that. So let me, I want to answer the question. Let me just first say there are categories of expenses here that are neither CMECF or PACER, right? The funds are being used for, you know, notices to crime victims, flat screens for jurors. The four categories that were identified. Right. And those I'm not asking, let me make it clear. Right. Maybe my hypothetical is you're afraid that I'm trying to trap you. I am not. I am trying to draw the line between your argument, which is all the way just the marginal cost of providing access, and Judge Hubel's middle position. Right. I understand the government's going to go further and go the other way. Right. They can argue that when they get up. Right. But I, what I, it's, it is not a model of clarity in terms of statutory writing. I mean, we see this all the time, obviously. But what's, why is Judge Hubel wrong that the underlying, which I, and maybe you disagree with this characterization, but what I read her opinion as saying is the underlying infrastructure costs that are attributable to providing access are also recoverable, not just as you said What's wrong with that argument? What's wrong with that argument is that's, all bureaucracies are going to want to do that with user fees. And what the Supreme Court's and the lower court's user fees jurisprudence is designed to do is to hold the line and say, look, you can charge for, as the Supreme Court put it in New England Power, and a reasonable charge is an identify, is made to an identifiable recipient for a measurable unit of government service. And I think that's, that's the marginal cost. That doesn't answer whether, it's not just the marginal cost though. I mean, it doesn't answer the question of whether the portion of the underlying infrastructure that supports public access versus what we do internally as a judiciary is also properly chargeable. Well, one, one good analogy I think is the Freedom of Information Act. Every agency charges people fees for getting records under the Freedom of Information Act. What they can charge is the marginal cost of disseminating that information, copying it, searching for it, making it available. What they cannot do is attribute the cost of collecting that information or maintaining a records room and then putting that on the users. I think a similar line can be drawn here. But I also think... No, but I mean, it's a good analogy, but unless I see the statutory language and see what it's actually saying, you can and can't collect as FOIA fees, it doesn't answer the question. Right, and I understand the frustration here because Congress said, you know, to the extent necessary to reimburse the cost, and then you have to wonder, what is the cost? And I think... Well, that's why I asked you the initial hypothetical, which is, if there was none of this infrastructure in place... Right. And Congress said, look, judiciary, go out and do this, and you can get fees to compensate for this because we don't want to give you a general appropriation, then wouldn't it seem natural to read this as allowing for fees to cover both the marginal cost... I think they... And the infrastructure. In that circumstance, they would have a better argument. But when you get to 2002, and Congress amends the statute to say, you know, this is all up and running, right? We see that you are charging more than the marginal cost of disseminating this information. We want you to move to a fee structure that makes this information freely available to users to the extent possible, and then... But they didn't say you can only get your marginal cost. They said to the extent necessary. Well, the marginal cost language is in the Senate report, not in the text of the statute. But I think it informs what... Why does that govern? Well, I think for those who use legislative history to inform their understanding of what the text means, when Congress said you can charge only to the extent necessary, I think that is an indication of what Congress meant. And it is consistent... Sure, but I mean, look, the legislative history here is helpful to you in some places, and early on says that one of the things that will be helpful to enhance access to the public is... This is from the 1996 House report, is enhancements for... Enhance use of the internet and electronic bankruptcy filings and things like that. When I read enhance use of the internet, it sounds to me like enhanced capabilities to have better portals and things like that, which, again, it sounds like infrastructure rather than just here is a way to get these documents. Well, it's true that Congress is encouraging... The whole point of the E-Government Act was to encourage the courts to be more transparent in various ways. But I think the Senate report is the only time you're actually seeing language that's pegged to what is only to the extent necessary mean. Let me also suggest, if you're looking for something like a middle ground position between Judge Hovell's view and our view, one way to handle this is you have an interlocutory appeal here. You're being asked to interpret the statute. And I think what you can do is interpret the statute, but then leave it on remand for the government to be able to argue that within this CMACF bucket, we don't really know. There's been no discovery. We don't know all of what falls under that bucket. The government could argue we need some... Some of this is absolutely necessary to disseminate these records to users. We don't think that's the case, but... Correct. I mean, when they talk about, you know, the cost of maintaining the CMACF, I don't know what that means. Right. If it means simply expenditures that the court can identify that unless we make these expenditures, the service will be impaired or the service will not be as good as the customers want it. Right. So enhancement. If somebody comes along and says, I can figure out a way to make PACER requesters who ask for information can get it demonstrably faster. Right. Then that's something that the user wants. And if it costs something to do that, it would seem to be reasonable to allow the fee to embrace that cost. Yeah. And I mean, I understand all you have here. If the cost is for decorating the office of my EMECF officer in the court, I'm not so sure that that qualifies. Right. And we know that... We don't know from the record that Judge Hovell's going to get to do that, right? Right. I think that's the best course is to send the case back down and on remand, let's see... With a clear explication... Yes. ...as to what we're talking about in terms of costs beyond what you call marginal costs and what the government may try to tell us on its side what it thinks that bundle looks like. Yes, Your Honor, because all we have here right now is just a spreadsheet. And so I don't see how you have the tools available to you to really discern what's behind that. But we do know that CM and ECF are sort of two different things that have been merged. CM... You can't have PACER without it, right? Well, you could. I mean... What does... What's a PACER user want? A PACER user wants to download PDF documents of court records. Right. Right. And they... Which have been filed through electronic means. Which have been filed through electronic means in the same way that, you know, if any agency runs a records room, there's some process for gathering those records. Everybody now creates a digital record and sends it to us, and we store it. Correct. Correct. And then we massage it for judges getting access to it internally or outside people getting access to it. Correct. And all of that benefits... There are lots of components of CM and ECF that benefit the courts internally. There are case management systems just for the courts. And there's also features that are for the convenience of litigants. And all that was known to Congress at the time Congress learned that CM and ECF was going to be used and PACER would have access to it. Correct. Correct. So the Congress clearly knows that other... There are beneficiaries to this structure. Yes. For which a fee is charged other than the users. That's right. And Congress didn't say, you know, you may charge this fee to the users and use it for things that benefit other people. Counsel, you've just about used your rebuttal time. Let's hear from the government. Okay. And we'll give you back three minutes. Thank you. Ms. Klein. May it please the Court. I know the merits are interesting, but I'd like to start with jurisdiction because we don't think Congress authorized this Court or Judge Huvel to be engaging the merits in this way. And I can be brief, but it's extremely important to understand the three central features of this statutory scheme that show that Congress did not impliedly create a damages action for an individual PACER user. First, whose decisions are at issue here, they're the decisions of part of the judiciary at the Judicial Conference chaired by the Chief Justice, and Congress exempted the Judicial Conference judiciary at large from review under the APA. But not from the Tucker Act or the Little Tucker Act. We're now talking about, that's correct, but we're talking about whether to infer a damages remedy that is not expressed and to get so, like as with any statutory interpretation question, you look at all of the relevant indicia. Let me ask you a hypothetical. Instead of giving complete discretion to the judiciary to set the fees, Congress had said, we want all this to happen, you charge 10 cents per page or whatever the actual cost to you, whichever is lower. Is that a statutory charge that would lead to an illegal exaction if the court implemented it improperly? Generally speaking, no. When Congress says to the judicial, because generally speaking, these fee structures, they're administrative billing mechanisms, but Congress hasn't set up a damages remedy. So, for example... Wait, wait, wait, wait. You're saying that if Congress enacts a statute setting a fee, a specific fee, and says, government, you can collect XML, and just put aside, if you have any separation of powers concerns, just assume we're talking about an executive branch agency. I don't see any difference between the two for this kind of claim myself, but if it makes it easier for you to answer, assume it's an executive branch agency. And that executive branch agency goes out and collects double what that statute is. Do you think Congress has to actually say in that statute that if the agency collects more, you can sue under the Tucker Act? Well, we do think it would be different for an executive branch agency, that the normal and get the money back from the agency's budget, not an implied damages remedy against the United States. But that's a typical illegal exaction claim. Well, there's... Let me identify the three differences here from what we'll call the typical illegal exaction claim. First is we're talking about a decision maker that is... I mean, I don't... Again, I think we're more interested in merits, and I don't want to run too much of this. But what you seem to be arguing is something that the government has continuously argued in all of these Tucker Act and Little Tucker Act cases is that even if the case involves money at some level, you have to read a further intent into the statute or the contract or whatever is the money mandating supporting piece of jurisdiction to allow the Court of Federal Claims or the District Courts under Little Tucker Act to exercise jurisdiction. And haven't we routinely disagreed with the government on every single one of those cases if it is a case where the underlying instrument, whether it's a contract or a statute, involves money? Sure, there are outlier cases like Norman where it's about land as opposed to an actual statute for money. And I can think of some other Tucker Act cases involving contracts that weren't actually about money. But when it's about money, isn't the implied remedy for wrongfully paid over money either a breach of contract claim or an implied or an illegal exemption claim? Well, for Cypress-Amex, which was about money, taxes illegally collected, the Court correctly set out the inquiry, which is you have to look at the substantive law to determine whether it was intended to provide monetary compensation. That was this Court unanimously in Cypress-Amex. But here, even if you use the narrower jurisprudence of legal exaction, the claimant has to be able to plead and then show that the particular amount sought, the value was, the particular amount was illegally exacted. And because of the way this statute is written, which is in aggregate terms, that do not, like the old shipping cases, allow the determination of what a correct fee would be, it is impossible for any pacer user to make that showing. And remember, this is a class action. It's just a collection of individual claims. And as defined by plaintiff, each download for which a charge was paid. That sounds like a damages question to me. It's not. We know there's a class of people that have paid, at least under their theory, if we agree with them on the merits, there are a class of people that have paid more money than they should. But how much they should get back depends on the court determining how much is in excess and then coming up with some kind of formula, doesn't it? No, Your Honor. So, let's just imagine an individual pacer user says, you know, in July 12, 2014, I paid a dollar to download a document. Even if you imagine certain expenditures were not made under the statute, okay, whether they're Judge Jubell's categories, whatever categories they are. If you look at actually the substantive statutes that govern the judicial conferences' fees and expenditures, first you see under 28 U.S.C. 612, you can carry forward surpluses, which they do routinely, you know, $40 million a year. This is because IT projects are not conducted within a fiscal year. So, even if you imagined, okay, we're just going to not spend that money, whether it's on, you know, web-based juror services, whatever, they could carry it forward. Second... What's that got to do with whether or not a portion of the fee was illegal? Because they could say... The fact that they can carry it forward and use it for something else. They wouldn't change the fees. So, they're just, they're saying like, look, okay, we're not expending... Well, the only time they're going to change the fee is if the court tells them that a portion of the fee is illegal. This is now, it's getting circular, but there is... Judge Jubell won't have any trouble at all at the end of the day giving a precise number to say what portion of the fee was illegal. No, actually, she will. I mean, what the certification order that she issued contemplated was an extended period, a lengthy period of fact and expert discovery, additional summary judgment briefing, and potentially a bench trial to try to answer the hypothetical question of what any particular user would have paid for a download if certain expenditures hadn't been made. That is unknowable. We're not going to depose, you know, the Chief Justice and the judges of the judicial conference to say, if you hadn't used this money, you know, for the juror services back in 2014, well, would you have carried forward a surplus? Might you have accelerated the enhancements to PACER and CMUCF? All right, or let's imagine you would change the fees somehow. Given the way these statutes are written, you don't know how. They could have done what they actually did quite recently as of January 1st, which was up to $30. You don't know any money. They could have said, we're going to expand the individualized exemptions. This statute is so far from what we talk about as the paradigmatic illegal exaction claim. Honestly, I still don't understand why this isn't a damages question. The judiciary should be able to figure out, here's how much it spends on these projects. Here's how much of it comes from general appropriations. Here's how much it comes from fees. And the court can say, here are the activities that you're allowed to spend fees on and how you parse it. And the excess that comes from fees over that, that they're allowed to incur fees for, is the cumulative amount that was an illegal exaction. And how you divvy up that among the class, again, seems like a damages calculation to me. No, because it goes to the basic point that Congress did not mean to give an individual PACER user a damages remedy that lets the PACER user come into court and say, imagine just an individual claim. Because on their theory, this happens to be a class, but someone could come in tomorrow. Why don't you address the merits finally? I will address the merits, but I want to make very clear that we do not believe Congress put this court in the position of going back over the judiciary's internal accounting and expenditures and compelling the judiciary to produce documents that are exempt under FOIA in aid of the inquiry that the district court began to undertake in this case. And instead, authorize the Judicial Conference to charge a fee even if it was knowingly, blatantly illegal and to collect the fee and have absolutely no remedy. Well, first, to be clear, we're talking about the judiciary. That's your position? No, Your Honor, but we're talking about the judiciary. Excuse me. Don't interrupt me, please. Let's assume that Judicial Conference says, you know, guess what? This is a great argument. We can charge everything we want for the fee. It has nothing to relate to anything. It has nothing, has no relationship at all to the cost of supplying things electronically. We're going to charge for the curtains at the Supreme Court, the Chief Justice's new chair and all the rest. Stick it in the fee. And we told the whole world we're doing that. We're redecorating all judges' offices with gold plate. And they do it and they put it on the front page of the Post. And there's absolutely no remedy. It's not that there's no oversight. So I'm just telling you that's what your position is. No, Your Honor, by statute, the fee schedule, when it's changed, has to go to Congress in advance. Congress every year, by statute, requires a detailed description of the expenditures. What they've shown in this case is that they love the fees because it means they don't have to appropriate. So we don't have to appropriate for the curtains for the Chief Justice, the gold-plated toilet? We don't have to appropriate for that? Great. Let the PACER users. What is it? It's three big users and a bunch of law firms. Let me ask you this question on the merits, just to test where you are. You know that the Supreme Court has a cafeteria. It's not a bad place to eat, although Justice Gorsuch doesn't like the pizza now. So let's assume that PACER, on PACER now, you can hook into PACER and you can get the menu, current menu for the Supreme Court's cafeteria. And the Judicial Conference decides that the cost of building up that electronic information should be passed on to PACER users because it's available electronically. Would it be appropriate to have that cost in the fee, yes or no? The Judicial Conference has limited... Yes or no on my hypothetical. Again... The cost of the menu, preparing the menu for the Supreme Court. Is that or is that not an appropriate PACER fee cost? We're not saying the Judicial Conference would ever do this, but the statute says... Do you have a lot of trouble answering questions? Generally in life or just when you come in front of the court? The statute says for access to information available through automatic data processing equipment. Ryan, my hypothetical covers that. That information would be, provide access available through automatic data processing equipment, but the next sentence also says, wait, you should be developing a fee structure that promotes public access and exempts persons... No, the people who go up there to litigate want to know what to eat the day they go and make the order electronically. You can do all that now on PACER. Your Honor, again, each year these expenditures culminate in appropriations legislation. So Congress is presumably not going to say you can charge for the Chief Justice's curtains, but the point is this is just a statutory claim, and Congress year after year enacts appropriations legislation in which it decides this is what I'm giving you direct appropriations for and I've seen what you're planning to use PACER fee revenue for. And, like, Congress doesn't have to accept that. It could modify it. But the claim here is that Congress should have appropriated direct funds for the particular programs, but not that Congress did do so. Counsel, you're into your rebuttal time. Do you wish to continue to use it or save it? I'll save it, Your Honor. All right. Thank you. Mr. Gupta. Unless the court has specific questions about jurisdiction or damages, I want to jump to the merits. I have a question about damages, and I think this is probably for best luck to Judge Ruvel, but there's a number, right, for the CMETF category. Do we have any idea what that number means? Well, I think this is what we were discussing earlier. I think what that number means needs to be fleshed out on remand. And I think, you know, we've got some uses that we know are totally impermissible and unrelated to PACER. We've got the PACER expenses that we concede are permissible. And then CMETF is a category that may include some things that are permissible because they are truly necessary to the marginal cost of disseminating. Well, I mean, a large part of CMETF is what now supports PACER. The electronic docket that's created by litigants going on and filing documents is what allows public access through PACER. And so those two seem inextricably intertwined. Well, I don't think. Okay. Okay. I mean, I understand you want to argue something different, but what I'm trying to ask you about is there are definitely portions of CMETF that are only used by the judiciary, clerk's office, and the like. Correct. And actually aren't even necessarily used by the litigants. Correct. So I guess for damages purposes, I wondered if you had any idea whether that broad category had in any way been narrowed down or was it just from the budget line number for the judicial conference? Right. Well, we've done no discovery. We've only gotten informally these spreadsheets, but we do think it's going to be possible to segregate out the CM component from CMETF, and we do think that's plainly impermissible. What I would suggest is that this court, because the court doesn't have a record really, that what it should do is interpret the statute and send it back to the district court to determine whether things within this CM category are truly necessary to the marginal cost of disseminating records to users, because we know that, you know. Well, that's assuming we agree with your marginal cost definition. Okay. Assuming we don't agree with that cost. If you don't agree with me. And we agree with the cost plus infrastructure. Right. You still have to be able to allocate the infrastructure to those costs. Well, right, but I think the devil will be in the details, because it is often the case in user fees cases that the government wants to take some of its overhead or infrastructure and attribute that to the service. We know that this is a service that is primarily for the convenience of litigants, right, in filing these things. The whole reason ECF exists is not because it delivers documents via pacer. You're not doing just litigants in a case who are doing the filing, as opposed to people in the public who want access to the information to write their own briefs or write articles or newspaper articles. Yeah, I mean, that is certainly. That's a whole category of users, isn't it? There's certainly a side effect of the existence of the CM system, which is that it disseminates, allows for the dissemination of these records. But, you know, I'll just give you the analogy to the FOIA cases or to other user fee cases. The courts draw a line and don't allow, and I realize I'm getting into my time, but I would just recommend the New England Power case from the Supreme Court. It is not the case that the government can just attribute all of the overhead costs to the service. And I would suggest that the better course is to leave that issue to be fleshed out on remand. Thank you. Thank you, counsel. Ms. Kline. Okay, just briefly, even in the user fee cases, the user fees generally build in infrastructure. They build in salaries. They build in overhead. It's not limited to marginal cost. The filing fee to docket an appeal in this court or other courts is $500. No suggestion that that's just about marginal cost. Building, so PACER itself is a portal to CMECF, as described by Judge Shovell. There's really little point in accessing PACER if you don't, in fact, get the records on CMECF. The electronic bankruptcy noticing is giving creditors information, case information. So that's the one thing I wanted to ask you about, and I get to ask you about on your opening, is she found that one okay, but not the notice to, I guess, local police officers and things like that about filings in criminal cases. I may not be getting the details right. I was curious as to if you thought there was a logical distinction between those two, and it could go either way over whether you should get them or not, because bankruptcy creditors are, in a sense, potential litigants or people affected. They're the public, but they're also affected by the specific case. It seems to me that sheriff's officers in the same way are a subset of the public that is affected, and I didn't really see any logic for the distinction between those two groups. If we thought one was good, the other one should be good, and if we thought it wasn't, they should both be out, but I didn't. Did you argue a different logic for chopping those off? No, I mean, we agree, and also even for the standard PACER CMECF, there are some cases that are sealed, and so they're open to a subset of the public, not the public generally, like immigration and Social Security. Prospective jurors are also members of the public, and since Congress has said you can have free use for categories of members of the public, so jurors get their juror summons electronically for free. That fits comfortably within the terms of the statute. I mean, again, remember, the statute just says access to information through automatic data processing equipment. It doesn't say it has to be housed on CMECF, which would have been an anomalous way to write the statute back then, since it was anticipating technological developments. You're no good with carrying the subject matter beyond CMECF out to any information that the public might find of interest, would you say related to the judicial system? Well, again, we're talking about how the judicial conference had to read these instructions. It said access to information available through automatic data processing equipment, and then provide for exemptions, and it has to be read in conjunction. So the Mississippi study, in your view, would be covered? Yes, Your Honor. Also, to be clear, that was $120,000 out of $920 million, so I don't think it's... I mean, that's an example that goes to the edge, for me, goes to the edge of what I think Congress sort of had in mind. I mean, if you are... The fascinating thing about this case is it's a statutory interpretation case, and we don't have a Chevron-type situation where there's an agency interpretation and all that pattern over time to follow. So it's sort of like the law before Chevron. And context matters, the context in which this whole thing was created. And the context certainly doesn't include Mississippi by any shape, stretch of the imagination. Judge Huvel drew the context to be related to case materials that are lodged in a judicial system, whether it's bankruptcy courts as well as regular courts, to which the public wants access. So why wasn't... Why isn't that, contextually, a reasonable line that she drew? The statute is written in anticipating tech developments. It's not meant to freeze things in time, and you wouldn't give the judicial... Well, stop right there. How do we know that? The statute originally was created because somebody came up with the idea of PACER, right? Right, but there's no... As Judge Huvel noted, there's no reference to PACER. There's no reference to a specific system. The statute, the context is what's not in the statute for interpretive purposes. But you wouldn't give less deference to the judicial conference than you would give to an executive agency if, hypothetically, we had an APA cause of action. We don't give any deference. There's no deference involved here, is there? No, of course there is. In fact, Judge Huvel applied a Chevron framework. It's just that the court concluded that the language was ambiguous. She didn't conclude the language was ambiguous. She said it's clear. She said both sides claim that the statute is clear, but that doesn't make it ambiguous. And she goes back and cites this sort of... Justice Scalia has just rolled over twice, right, at some point, about what's going on here. Just to be clear, if you were going to deem the judicial conference's actions reviewable, the judiciaries, you wouldn't give less deference than you would give to an executive branch agency. Chevron is just a gloss and assumption about when Congress delegates to a part of the government to administer a scheme. Here are the delegations to the judicial conference that they get deference. And the tax... But I want to make sure I touch on the courtroom technology, just because, as I said, the Mississippi study is a drop in the bucket. I don't think there's any claim it would have affected fees. The courtroom technology... Well, you're not making some fast error on the Mississippi. No, Your Honor, but to be clear... Because, I mean, you're going to have to launch when you let the Supreme Court in. I want to make sure that we address the bigger ticket item, which is that Judge Huvel, the way she analyzed courtroom technology, is that if it's AV equipment and the information presented is then uploaded to CMECF, then you can count the technology expenses. But if it's presented to the public, who care enough to come into court and want to see this case information available through automatic data processing equipment, it's verboten. And there's nothing in the text of the statute that would have... Thank you, counsel. As you can see, your red light is long gone. Please have your cases. Cases submitted. All rise.